Holdings, Swiney, et al. And we have Mr. James Noonan for the appellant and we have Mr. Eppersbacher for the appli. And you may begin when you're prepared to do so, Mr. Noonan. Good morning. I'm an attorney for the court. My name is James Noonan. I'm appearing today on behalf of the The issue on appeal today, plaintiff contends, is whether the Illinois Mortgage Proposal Law allows the termination of all possessory interests subject to real estate, regardless of when those interests were acquired. It is the plaintiff's position that it does. And even if the court were disinclined to read the Mortgage Proposal Law, that brought it, it should nevertheless find that, in this case, the possessory interests of the other parties, that is, Mr. Charles Swiney and Shelby County State are terminated because the two peculiar facts of this case, the lessee and the mortgagor, are the same person. And under the Illinois Mortgage Proposal Law, an entry of foreclosure will terminate the interests of a mortgagor. This case does not present any significant factual disputes. Sometime prior to, sometime in 2000, in 2002, the subject property was owned by Ms. Durst, who granted a 50-year leasehold to Mr. Charles Swiney, I believe a relative. Later, Mr. Swiney married Karen Swiney, and they made mortgage to the Shelby County State Bank for approximately $42,000, which mortgage was duly reported and entered into the records. Thereafter, Ms. Durst deeded the property, the fee interest, to Charles and Karen Swiney. They thereafter took out a mortgage from Chase Bank in which they pledged fee interest in the subject real estate to Chase Bank. Ms. Swiney later passed away, and Mr. Swiney fell into default by failing to pay on the Chase Bank mortgage. That mortgage has been duly assigned to the plaintiff, and it brought the incidental foreclosure proceeding. The Illinois Mortgage Foreclosure Act, which we contend governs the disposition of this case, was enacted in 1987, and it codified all existing common law rules related to foreclosure and basically put all the foreclosure rules that theretofore existed into one statute. Not only did the mortgage foreclosure law collect, organize, and modify existing foreclosure rules, it made several substantive changes to foreclosure law as well. For instance, it eliminated post-sale redemption rights, except in a very limited case. It curtailed the mortgagor's right of redemption. It eliminated the common law requirement that the mortgagee must strictly comply before foreclosing. It eliminated third-party redemption rights and changed pre-judgment possession rules. Those are all significant substantive changes to existing common law and statutory foreclosure rules. And it is the plaintiff's position in this case that the enactment of the Illinois Mortgage Foreclosure Act clarified any theretofore existing case law that undermined a mortgagee's right to possession, full and complete possession, following the entry of a mortgage foreclosure. We direct Your Honor's attention to several sections of the Code that support that conclusion. The first provision, Section 1501B of the Code, identifies permissible parties who may be joining the foreclosure. Those are defined as all persons having a possessory interest in a mortgage real estate. It goes on to say, in Subsection D of that provision, by joining them in the case, the termination of the lease would be specifically ordered by the court in the judgment of foreclosure. Second, the Illinois Mortgage Foreclosure Law has a model form that a mortgagee could and should be encouraged to use to prosecute foreclosures. And in Subsection A3T of that form, it allows the plaintiff to name tenants as persons whose interests are sought to be terminated in the foreclosure. Furthermore, a new amendment to the Illinois Mortgage Foreclosure Act, Section 1504.5, requires a mortgagee to provide a certain notice to residential mortgagors called the homeowner notice. And that says that lawful occupants have the right to live in the home until the order of possession is entered. Subsection 1508G says that, excuse me, that the order confirmed in sale shall include an award to the purchaser of possession of mortgage real estate as of the date 30 days after the entry of the order against the parties to the foreclosure whose interest is terminated. Another recent amendment to the Mortgage Foreclosure Law requires the plaintiff to provide notice of the judicial sale to the homeowner with a statement that the homeowner has the right to remain in possession for 30 days after the end of the foreclosure. Finally, Section 1701 supports this conclusion as well. It provides that the holder of the deed at the end of the foreclosure shall be entitled to possession of the mortgage real estate as of the date 30 days after the order confirming the sale is entered against those parties to the foreclosure whose interests in court were terminated. Subsection 1701 goes on to say that a mortgagee maintaining a proceeding against a person not named in the foreclosure can evict that person under the Forcible Entry and Detainer Statute or bring a supplemental petition in the foreclosure case itself to terminate that interest. None of these provisions does it as the right to possession or the termination of a possessory interest dictated by the time and date when those leases were entered. It is the plaintiff's position that is in an oversight. It is his position that, taken together, the clear intent of all of these sections is that at the end of the foreclosure proceeding, all rights of possession contrary to the mortgagee or the successful purchaser of the foreclosure sale cease and the fee interest and possessory interest are reposed in one person. And it is the plaintiff's contention that this was the intention of the drafters of the Illinois Mortgage Foreclosure Law because what many of the changes in the foreclosure law sought to do was to make property more marketable. And it is the plaintiff's contention that this is another way that they've done this by making it that if anybody, a third-party bidder, did have a foreclosure sale, there's some assurance or high degree of assurance that if they are of a successful purchase, they would have the fee interest and the possessory interest and all other claims to that real estate will be terminated. If the court is disinclined to find that the mortgage foreclosure law supports the conclusion that all possessory interests are terminated at the end of the foreclosure, the court should nonetheless reverse the trial court with respect to this case. Because here, Mr. Sweeney specifically pledged his possessory interests in the real estate to Chase Bank. So at the end of this case, it's clear that Mr. Sweeney's interests are terminated. He pledged those to the bank. And those are found in the mortgage documents where the record on page 20 is a copy of Chase's mortgage. And Mr. Sweeney specifically states, despite that it's not page 20, it's page 17 of the record, Mr. Sweeney states that Grantor presently assigns to Lendon all of Grantor's right, title, and interest in and to all leases of the property and all rents from the property. It further provides, three pages later, that Grantor and borrower agree that Grantor's possession and use of the property shall be governed by the following provisions. It goes on to say, until in default, Grantor may remain in possession, control of, and operate and manage real estate and other rents. In other words, once the mortgagor, Mr. Sweeney, is defaulted, his rights to possession and his interest in the leasehold terminate. And the mortgagee's interest is entitled to foreclose those lease and possessory rights of Mr. Sweeney. That being the case, it follows that any lien on those rights terminate as well, because without the possessory interest, there is nothing to lien. The lien is effectively eliminated, as a matter of fact. The, I'd like to say briefly that there's a lot of discussion in the briefs with respect to the merger doctrine. And plaintiff concedes that the merger doctrine does not operate to merge Mr. Sweeney's interest as a leaseholder and as mortgagor. But it is plaintiff's contention here that irrespective of what the merger doctrine says or provides, here in the mortgage foreclosure proceeding, which is governed by the Illinois Mortgage Foreclosure Law, it provides that his interest is terminated at the conclusion of the foreclosure. As I meant, this is a case without any facts of dispute. I submit it's a matter of statutory interpretation, and I'd like to reserve my training time for further comment. Thank you. So noted. Thank you, Mr. Noonan. You'll have the opportunity to rebut, Mr. Epstein. May I please report, Mr. Noonan? This is Frank Dove's case. Frank Dove is not here today because in the short period of time after the case was decided in the trial court, he suddenly and unexpectedly died. So I'm counsel on appeal as the successor partner of the firm. This is a case that really involves fundamental principles of fairness, justice, and even constitutional law. From the earliest days of the common law, it's been a fundamental principle that the law will not aid and abet one party in the taking of the property of another without just compensation. However, reduced to its basic terms, the argument that you've just heard by my learned opponent requires the surrender of the Shelby County State Bank's mortgage without any compensation whatsoever. A simple illustration will suffice to demonstrate the truth of that statement. Up in my neck of the woods, we have a lake, Lake Pena. And on Lake Pena, the property is not sold. The lots are not sold. They're leased on 99-year leases. It's quite common. We deal with it all the time in Shelby County. If you have a 99-year lease from the owner, and in reliance on that 99-year lease, you go out and you borrow money from the Shelby County State Bank and build your home there. And you, in fact, do build a home, give the mortgage, the mortgage is perfected, and you build a $150,000 home, which is big money in my part of the world. That's yours for 99 years. Under Mr. Noonan's theory, if the owner then, after all that is done, goes out and mortgages the fee to that property of which the leasehold is a part for purposes of whatever, building roads, going to Florida, whatever it is, and then the owner defaults on his mortgage payments, the second bank is entitled to file a foreclosure action. And in that foreclosure action, filed with 95 years left on the 99-year lease, the 99-year lease evaporates and the second bank not only takes the home but also wipes out the mortgage of the first bank. Now, that's not a fair result. It's not a proper construction of the LOM mortgage foreclosure law, and it is not a necessary construction of the LOM mortgage foreclosure law. Mr. Noonan conceded here before you this morning that under a common law analysis of the doctrine of merger that the Sweeney's leasehold does not merge into the Sweeney's Fee Estate. The reason it does not merge at common law is because of the intervening Shelby County State Bank mortgage. The intervening Shelby County State Bank mortgage is a third party and an innocent third party who has a debt secured by that leasehold. And because of that, at common law, whether you use traditional common law analysis or you use equity analysis, you get to the same point, and that is that the two estates do not merge and the Shelby County State Bank mortgage is not thereby drowned into the merger. It remains full, in force, and in effect. And that's what the trial court ruled. That was the fight at the trial court level. Now that issue is conceded, and the question has mutated into given that that is the common law result in this case, does the enactment of the LOM mortgage foreclosure law change that result? Well, there are several reasons why it does not. The first one is that it's constitutionally impermissible for it to change the result. It is, in fact, improper to construe the LOM Mortgage Foreclosure Act in such a way as to wipe out or drown the interest of the Shelby County State Bank as the first mortgagee in this case. The Constitution in 1970, Article I, Section 16, says in pertinent part that no law impairing the obligation of contracts shall be passed. If you construe the LOM mortgage foreclosure law the way my learned opponents suggest that you do, that's exactly what you've done. You've interpreted this to be a law that impairs the obligation of the contract between Sweeney's and the Shelby County State Bank on their mortgage. You don't have to do that. You don't have to do it because under the LOM Mortgage Foreclosure Act, Mr. Noonan rests his argument on the provisions of 735 ILCS 5-15-1501B, as in Boyd, which talks about permissible parties. But that's not the correct section to define the parties in this case. In this case, the correct section to define the parties under the LOM Mortgage Foreclosure Law is 735 ILCS 5-15-1501D, as in Dog. That's because under 1501D, the bank, the Shelby County State Bank, is not a permissible party. They are a party as of right. And if they are a party as of right, when you go on then to section 1501E-4, you find the following. Except as provided in 15-1501D, the interest of any person who is allowed to appear and become a party shall be terminated. If the Shelby County State Bank is a party as of right under 1501D, then they are not required to have their interest terminated in the final judgment of the circuit court on the judgment foreclosure action of 2P Holdings. If you look at 15-1508G, you see another reference to this fact. That statute provides that the order confirming the sale shall include an award to the purchaser of possession of the mortgage real estate against the parties to the foreclosure whose interests have been terminated. But under 1501E-4, except as provided in 1501D, the interest shall be terminated and Shelby County State Bank is under 1501D as a party as of right. Finally, if you look at 1701D, it provides the purchaser shall be entitled to possession of the mortgage real estate against those parties to the foreclosure whose interests the court has ordered terminated. Well, the trial court in this case did not order the interest of the Shelby County State Bank terminated in the leasehold mortgage because they didn't have to do so because they are a party as of right under 1501D. And because they are a party as of right under 1501D, 1501E-4 accepts them from the requirement of termination. So you don't have to accept the construction that my lawyer and opponent have suggested to you. And of course, because the Illinois Mortgage Foreclosure Law is a derogation of the common law, you should not. Clearly, under the cases that we have cited and discussed with you in the briefs, the Illinois Mortgage Foreclosure Law is a derogation of the common law. We've already established that it's uncontroverted here before this court that under the common law the leasehold estate of Sweeney does not merge in the fee estate of Sweeney and therefore the Shelby County State Bank leasehold mortgage does not drown in such a merger. So if the Illinois Mortgage Foreclosure Law is a derogation of the common law, there must be something specifically that says the doctrine of merger is no longer applicable. You'll search the Illinois Mortgage Foreclosure Law until your eyes cross and you'll never find that. You'll find it in some other sections with regard to some other principles that Mr. Noonan has put before you. But you won't find it with regard to this issue. So then the question becomes, is it impliedly a derogation of the common law? And of course, it's not impliedly a derogation of the common law because it's fundamentally and constitutionally improper to construe it in that fashion. Mr. Noonan suggests, and this is the first time you've heard this argument, that in spite of everything we've just talked about, that at the end of the day, even if you rule in favor of the position being taken on behalf of the Shelby County State Bank on every other issue, you still ought to reverse the trial court because the language of the mortgage that he signed subsequent to the mortgage of the leasehold interest pledges his possessory interest in the real estate. And now I want to go back with you to my dean, Professor Cribben. Professor Cribben taught property law at U of I in the 70s when I was there, and here's how he talked about title. He said, you've got to think about title as a bundle of sticks. A bundle of sticks all taped together, wrapped up with a nice bow, make up a fee simple absolute. And you can take those sticks out, and when you take them out, you reduce the fee simple absolute. So you can take out a stick that represents the mineral rights, and it's gone. And you've still got a bundle of sticks that represents an interest in the real estate, but it's no longer a fee simple absolute. And you can take out another stick over here, and this stick represents the right to receive the rents and profits of the land. You still have the land. You've lost the rents and profits. You've lost the mineral rights, but you've still got the bundle of sticks. Well, one of those sticks is a leasehold mortgage. So you have a right as the owner to take out the stick that represents a mortgage of your leasehold of the property and give it to somebody else. When you do, you've still got the bundle of sticks. But when you subsequently pledge the bundle of sticks to secure a second mortgage, you can't pledge the stick that represents the mineral rights because it's gone. You can't pledge the stick that represents the right to receive the rents and profits because it's gone. And you can't pledge the stick that represents a leasehold mortgage interest in the property because it's gone. So what you've pledged is everything else. These sticks that have already been conveyed prior to the subsequent second mortgage remain valid subsisting interest in the real estate. And so it doesn't matter how Mr. Sweeney signed when he signed the second mortgage because at the time he signed the second mortgage, the stick that's the critical stick in this case was gone and couldn't be pledged. At the end of the day, what's at stake in this particular case is the issue of whether or not substantive due process will permit the legislature of this state to pass an act that terminates the property rights of people ex post facto. There's a case that's cited in the briefs. It comes down to this part of the world, down at the Salem Bottling Plains, I recall, where the legislature tried to change the rules of the game after the fact. You had to set up rules by which bottlers and the companies that were contracting for their services were governed. And a contract was entered into based upon the laws that then existed. And then the bottling lobby got into the legislature, got them to pass a law that significantly improved the position of the bottling companies, vis-a-vis the pesticola companies, I recall. In any event, Coca-Cola then attempted to terminate the contract because the bottling company breached it. The bottling company said you can't breach, we're in compliance with the statute, and a case came up on the issue of whether or not the Constitution would permit a legislature to pass such a law. And, of course, the answer is no. Why? Because it's an impairment of a right contract. Contracts are sacred. The whole system lives and dies because the financial institutions and the manufacturers, and the business people of this community can rely upon the validity of their contracts. And what Mr. Newton is asking you to do here is to say, oh, well, we're not going to extend that fundamental principle to the point that it protects people like Mr. Sweeney and people like the Shelby County State Bank because leaseholds need to be terminated at the time of mortgages so that real estate can be more saleable. That's just not the case. It's not the case as a matter of common law. It's not the case as a matter of constitutional law. And it's not the case as a matter of a reasonable and proper reason to deliver a mortgage foreclosure. Does the court have any questions? Thank you, Mr. Rector. Thank you very much. Mr. Noonan, your rebuttal time. The council's discussion and zeroing in on this proceeding constitutional issue and equity issue about the termination of the contract is I can see something that is – I don't think red hair is the right word, but I think it misses the mark entirely. In my neck of the woods, we also have things called 99-year ground leases, extensive leases. The difference in the situation that I'm familiar with, and I'm sure councils agree, are that those leases tend to be reported. And in those leases, the lease – the lessor, the grantor of the lease, covenants not to mortgage or sell the property. That's how junior – that's how mortgagors strike mortgagees on leaseholds protect themselves. Here, there's no evidence that the lease is reported. We found on the research, Mr. Rector, all we have is a mortgage on the leasehold. So there's not – this is not a situation where we're terminating an innocent party here. I take that back. Shelby County State Bank maybe is an innocent party, but it should look either to Mr. Sweeney or should have taken some action such as reporting that lease so that any leaseholder, be it Mrs. Durst or if she sold it to anybody else, would not have mortgaged the real estate from under her. There's no question that the profit owner of that real estate was entitled to mortgage it, and there's no evidence, no compulsion on their part, contractually otherwise, that they weren't allowed to do that. This isn't a constitutional issue. This issue would have been avoided if there was some covenant running with the land from the lessor to the lessee prohibiting the lessor from mortgaging or otherwise alienating the fee interest of the land. It wasn't here. The implication of the plaintiff's changed positions in this case is, I believe, unfounded as well. From the moment we filed the case to taking the position, this case is covered by the Illinois Mortgage Report. Admittedly, there was a lot of discussion in the lower court regarding the merger doctrine because Frank Duggan, the counsel, conceded that no case is directly on point under the Illinois Mortgage Foreclosure Act addressing this issue. I think it's telling that Shelby County State Bank does not address one of the other, I think, incontrovertible facts which would dictate the outcome, I believe, of this particular case, which is that irrespective of the law regarding leaseholds, mortgaging leaseholds and constitutional rights, that Mr. Sweeney pledged his leasehold to Chase Bank as a condition for this mortgage. When he defaulted, that leasehold was terminated. Under the Illinois Mortgage Foreclosure Act, the mortgagee is entitled to possession against the mortgagor at the end of that foreclosure proceeding. And as an implication, that ends any liens or attachments on that leasehold interest that it takes to prove. Mr. Honors, do you have any more questions? Thank you both for your arguments and briefs, and we'll take them under advisement.